UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

CLYDE T. JENNINGS,

                    Petitioner,

v.                                      Case No. 3:10-cv-199-J-34MCR

SECRETARY, FLORIDA
DEPARTMENT OF CORRECTIONS,
et al.,
                    Respondents.
_____

**ORDER**

**I. Status**

Petitioner Clyde T. Jennings, who is represented by counsel, initiated this action by filing a Petition for Writ of Habeas Corpus (Petition) (Doc. #1) and exhibits (P. Ex.) under 28 U.S.C. § 2254 on March 4, 2010. Petitioner challenges a 2004 state court (St. Johns County, Florida) judgment of conviction for sexual battery upon a helpless person. Respondents have submitted a memorandum in opposition to the Petition. See Respondents' Response to Petition (Response) (Doc. #6) with exhibits (Resp. Ex.). Petitioner submitted a brief in reply on October 7, 2010. See Petitioner's Reply to Respondents' Response to Petition (Reply) (Doc. #8). This case is ripe for review.

## II. Procedural History

On July 15, 2003, the State of Florida charged Clyde Thomas Jennings with sexual battery upon a helpless person. Resp. Ex. 1 at 40, Information. After jury selection, Jennings proceeded to a jury trial. Resp. Exs. 3, 4, 5, 6, Transcripts of the Jury Trial (Tr.). At the conclusion of the trial, a jury found Jennings guilty of sexual battery upon a helpless person. Resp. Ex. 1 at 93, Verdict; Tr. at 550. On November 9, 2004, the trial court found Jennings to be a sexual predator and sentenced him to a term of ten years of imprisonment followed by five years of sex offender probation. Resp. Exs. 1 at 128, 135-43; 2 at 248-52.

On appeal, Petitioner, through counsel, filed an Initial Brief, arguing that a late-disclosed laboratory report prejudiced his trial preparation, and the trial court's refusal to continue the trial constituted a palpable abuse of discretion (ground one); the trial court improperly excluded defense evidence without first conducting a Richardson[1] inquiry (ground two); the State's failure to designate the nurse as an expert witness constituted a discovery violation warranting a Richardson inquiry, and the nurse's expert medical testimony constituted fundamental error (ground three); the prosecutor's argument and the admission of unsubstantiated hearsay testimony regarding post-traumatic stress syndrome led to fundamental error (ground four); and the evidence was insufficient

---

[1] Richardson v. State, 246 So.2d 771 (Fla. 1971).

2

to establish that the victim, K.M., was physically helpless to resist (ground five).  Resp. Ex. 7 at 1-58.  The State filed an Answer Brief.  <u>Id</u>. at 59-107.  Petitioner filed a Reply Brief and a Request for Oral Argument.  <u>Id</u>. at 108-28, 129-30.  On November 22, 2005, the appellate court affirmed Petitioner's conviction and sentence per curiam, <u>see</u> <u>Jennings v. State</u>, 916 So.2d 810 (Fla. 5th DCA 2005); Resp. Ex. 7 at 133, and the mandate issued on December 9, 2005, <u>see</u> Resp. Ex. 7 at 134.  Petitioner did not seek review in the United States Supreme Court.

On November 8, 2006, Petitioner, through counsel, filed a motion for post conviction relief pursuant to Florida Rule of Criminal Procedure 3.850.  Resp. Ex. 8 at 1-18.  In his request for post conviction relief, Petitioner asserted that counsel (Thomas E. Cushman and Anne Marie Gennusa) were ineffective because they failed to: object to the nurse being allowed to testify as an expert (ground one); list in the discovery response and introduce Lauren Sanchez's second statement changing the amount of time Petitioner was alone with the victim (ground two); properly address the victim's testimony concerning her post-traumatic stress disorder (ground three); request a <u>Richardson</u> hearing or renew a motion for continuance concerning the State's late disclosure of a laboratory report regarding spermatozoa located on a slide obtained from the rape kit (ground four); call Dr. Gerald Plattock as a defense witness to rebut Nurse Muskus' testimony (ground five);

3

object to the victim's incriminating hearsay statements (ground six); request a hearing on the admission of hearsay evidence and the issue of reflective thought (ground seven); develop the defense that the victim was dishonest about the timing of her last sexual encounter (ground eight); introduce the laboratory report into evidence (ground nine); and object to the prosecutor's improper comments in closing argument (ground ten). The State responded. Id. at 138-49. On May 16, 2007, the court denied the post conviction motion. Id. at 150-89. In considering Petitioner's motion for rehearing, see id. at 190-98, the court granted Petitioner leave to amend eight of his claims and stated that grounds two and five "remain denied, with prejudice." Id. at 199-200.

On January 30, 2008, Petitioner, through counsel, filed an amended Rule 3.850 motion. Resp. Ex. 9 at 201-21. The State filed a motion to dismiss because the motion was not made under oath. Id. at 223-24, 226-27. On February 8, 2008, the court dismissed the amended motion without prejudice since Petitioner had failed to sign the oath included at the end of his motion. Id. at 229. On February 28, 2008, Petitioner, through counsel, filed a second amended motion, raising eight claims. Id. at 232-52. The State responded on June 10, 2008. Id. at 256-69. On November 10, 2008, the court summarily denied claims one, three, four, seven, and ten

and ordered that an evidentiary hearing be held as to claims six, eight, and nine.  <u>Id</u>. at 271-77.

Prior to the evidentiary hearing, the State filed a motion to strike or dismiss the Rule 3.850 motion, asserting that Petitioner waived his right to file a Rule 3.850 motion when he entered a plea in a separate case.[2]  Resp. Ex. 10 at 409-11.  On February 20, 2009, the court held a hearing, at which the trial judge heard counsels' arguments.  <u>Id</u>. at 481-509, Transcript of the Proceedings.  On April 15, 2009, the trial judge dismissed the second amended Rule 3.850 motion, finding that when Petitioner pled guilty in the separate case concerning his step-daughter (Case No. 03-1883) he waived the right to file a Rule 3.850 motion in the instant case.  Resp. Ex. 10 at 433-35; Tr. at 500-06; P. Ex. 2. Petitioner appealed and filed a brief.  Resp. Ex. 11 at 13-33.  The State stated that no response would be filed unless ordered to do so by the court.  <u>See id</u>. at 34-35.  On November 24, 2009, without requiring the State to file a response, the appellate court affirmed the trial court's decision per curiam.  <u>Jennings v. State</u>, 22 So.3d 559 (Fla. 5th DCA 2009); Resp. Ex. 11 at 36.  The mandate issued on December 16, 2009.  Resp. Ex. 11 at 37.

---

[2] On January 31, 2006, Petitioner, who was represented by counsel, pled guilty to sexual activity with a child (his step-daughter).  <u>See</u> P. Ex. 2, Appendix A, Case No. 03-1883, Transcript of the Plea Proceedings (Plea Tr.) at 9, 13, 14, 18; Resp. Ex. 10 at 437-62.

### III. One-Year Limitations Period

For this Court's analysis, the Court will assume that Petitioner's Rule 3.850 motion was properly filed and that he timely filed the Petition in this Court.

### IV. Evidentiary Hearing

"In deciding whether to grant an evidentiary hearing, a federal court must consider whether such a hearing could enable an applicant to prove the petition's factual allegations, which, if true, would entitle the applicant to federal habeas relief." Schriro v. Landrigan, 550 U.S. 465, 474 (2007) (citation omitted). "It follows that if the record refutes the applicant's factual allegations or otherwise precludes habeas relief, a district court is not required to hold an evidentiary hearing." Id. The pertinent facts of this case are fully developed in the record before the Court. Because this Court can "adequately assess [Petitioner's] claim[s] without further factual development," Turner v. Crosby, 339 F.3d 1247, 1275 (11th Cir. 2003), cert. denied, 541 U.S. 1034 (2004), an evidentiary hearing will not be conducted.

### V. Standard of Review

The Court will analyze Petitioner's claims under 28 U.S.C. § 2254(d). This standard is described as follows:

> As explained by the Supreme Court, the phrase "'clearly established Federal law' . . . refers to the holdings . . . of [the Supreme Court's] decisions as of the time

6

of the relevant state-court decision." Williams v. Taylor, 529 U.S. 362, 412, 120 S.Ct. 1495, 1523, 146 L.Ed.2d 389 (2000). We have held that to be "contrary to" clearly established federal law, the state court must either (1) apply a rule "that contradicts the governing law set forth by Supreme Court case law," or (2) reach a different result from the Supreme Court "when faced with materially indistinguishable facts." Putman v. Head, 268 F.3d 1223, 1241 (11th Cir. 2003).

As regards the "unreasonable application" prong of § 2254(d)(1), we have held as follows:

> A state court decision is an unreasonable application of clearly established law if the state court unreasonably extends or fails to extend a clearly established legal principle to a new context. An application of federal law cannot be considered unreasonable merely because it is, in our judgment, incorrect or erroneous; a state court decision must also be unreasonable. Questions of law and mixed questions of law and fact are reviewed de novo, as is the district court's conclusion regarding the reasonableness of the state court's application of federal law.

Jennings v. McDonough, 490 F.3d 1230, 1236 (11th Cir. 2007) (quotation marks and citations omitted). In sum, "a federal habeas court making the 'unreasonable application' inquiry should ask whether the state court's application of clearly established federal law was objectively unreasonable." Williams, 529 U.S. at 409, 120 S.Ct. at 1521. Finally, 28 U.S.C. § 2254(e)(1) commands that for a writ to issue because the state court made an "unreasonable determination of the facts," the petitioner must rebut "the presumption of correctness [of a state court's factual

findings] by clear and convincing evidence."[3]
28 U.S.C. § 2254(e)(1).

Ward v. Hall, 592 F.3d 1144, 1155-56 (11th Cir. 2010), cert.
denied, 131 S.Ct. 647 (2010).

Finally, for a state court's resolution of a claim to be an
adjudication on the merits, so that the state court's determination
will be entitled to deference for purposes of federal habeas corpus
review under AEDPA, all that is required is a rejection of the
claim on the merits, not an opinion that explains the state court's
rationale for such a ruling. Harrington v. Richter, 131 S.Ct. 770,
785 (2011) (holding that section 2254(d) does not require a state
court to give reasons before its decision can be deemed to have
been adjudicated on the merits); Wright v. Sec'y for the Dep't of
Corr., 278 F.3d 1245, 1255 (11th Cir. 2002), cert. denied, 538 U.S.
906 (2003).  Thus, to the extent that Petitioner's claims were
adjudicated on the merits in the state courts, they must be
evaluated under § 2254(d).

## VI. Exhaustion/Procedural Default

There are prerequisites to a federal habeas review.  Before
bringing a § 2254 habeas action in federal court, a petitioner must
exhaust all state court remedies that are available for challenging
his state conviction.  See 28 U.S.C. § 2254(b), (c).  To exhaust

---

[3] "This presumption of correctness applies equally to factual
determinations made by state trial and appellate courts." Bui v.
Haley, 321 F.3d 1304, 1312 (11th Cir. 2003) (footnote omitted)
(citing Sumner v. Mata, 449 U.S. 539, 547 (1981)).

state remedies, the petitioner must "fairly present[]" every issue raised in his federal petition to the state's highest court, either on direct appeal or on collateral review. <u>Castille v. Peoples</u>, 489 U.S. 346, 351 (1989) (emphasis omitted). Thus, to properly exhaust a claim, "state prisoners must give the state courts one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process." <u>O'Sullivan v. Boerckel</u>, 526 U.S. 838, 845 (1999).

In addressing exhaustion, the United States Supreme Court explained:

> Before seeking a federal writ of habeas corpus, a state prisoner must exhaust available state remedies, 28 U.S.C. § 2254(b)(1), thereby giving the State the "'"opportunity to pass upon and correct" alleged violations of its prisoners' federal rights.'" <u>Duncan v. Henry</u>, 513 U.S. 364, 365, 115 S.Ct. 887, 130 L.Ed.2d 865 (1995) (per curiam) (quoting <u>Picard v. Connor</u>, 404 U.S. 270, 275, 92 S.Ct. 509, 30 L.Ed.2d 438 (1971)) To provide the State with the necessary "opportunity," the prisoner must "fairly present" his claim in each appropriate state court (including a state supreme court with powers of discretionary review), thereby alerting that court to the federal nature of the claim. <u>Duncan</u>, <u>supra</u>, at 365-366, 115 S.Ct. 887; <u>O'Sullivan v. Boerckel</u>, 526 U.S. 838, 845, 119 S.Ct. 1728, 144 L.Ed.2d 1 (1999).

<u>Baldwin v. Reese</u>, 541 U.S. 27, 29 (2004).

Recently, the United States Supreme Court discussed the doctrine of procedural default:

Federal habeas courts reviewing the
constitutionality of a state prisoner's
conviction and sentence are guided by rules
designed to ensure that state-court judgments
are accorded the finality and respect
necessary to preserve the integrity of legal
proceedings within our system of federalism.
These rules include the doctrine of procedural
default, under which a federal court will not
review the merits of claims, including
constitutional claims, that a state court
declined to hear because the prisoner failed
to abide by a state procedural rule. <u>See</u>,
<u>e.g.</u>, <u>Coleman</u>,[4] <u>supra</u>, at 747-748, 111 S.Ct.
2546; <u>Sykes</u>,[5] <u>supra</u>, at 84-85, 97 S.Ct. 2497.
A state court's invocation of a procedural
rule to deny a prisoner's claims precludes
federal review of the claims if, among other
requisites, the state procedural rule is a
nonfederal ground adequate to support the
judgment and the rule is firmly established
and consistently followed. <u>See</u>, <u>e.g.</u>, <u>Walker
v. Martin</u>, 562 U.S. --, --, 131 S.Ct. 1120,
1127-1128, 179 L.Ed.2d 62 (2011); <u>Beard v.
Kindler</u>, 558 U.S. --, --, 130 S.Ct. 612,
617-618, 175 L.Ed.2d 417 (2009). The doctrine
barring procedurally defaulted claims from
being heard is not without exceptions. A
prisoner may obtain federal review of a
defaulted claim by showing cause for the
default and prejudice from a violation of
federal law. <u>See</u> <u>Coleman</u>, 501 U.S., at 750,
111 S.Ct. 2546.

<u>Martinez v. Ryan</u>, 132 S.Ct. 1309, 1316 (2012).

Thus, procedural defaults may be excused under certain
circumstances: notwithstanding that a claim has been procedurally
defaulted, a federal court may still consider the claim if a state
habeas petitioner can show either (1) cause for and actual

---

[4] <u>Coleman v. Thompson</u>, 501 U.S. 722 (1991).

[5] <u>Wainwright v. Sykes</u>, 433 U.S. 72 (1977).

prejudice from the default; or (2) a fundamental miscarriage of justice. Maples v. Thomas, 132 S.Ct. 912, 922 (2012) (citations omitted); In Re Davis, 565 F.3d 810, 821 (11th Cir. 2009) (citation omitted). In order for Petitioner to establish cause,

>the procedural default "must result from some objective factor external to the defense that prevented [him] from raising the claim and which cannot be fairly attributable to his own conduct." McCoy v. Newsome, 953 F.2d 1252, 1258 (11th Cir. 1992) (quoting Carrier,[6] 477 U.S. at 488, 106 S.Ct. 2639). Under the prejudice prong, [a petitioner] must show that "the errors at trial actually and substantially disadvantaged his defense so that he was denied fundamental fairness." Id. at 1261 (quoting Carrier, 477 U.S. at 494, 106 S.Ct. 2639).

Wright v. Hopper, 169 F.3d 695, 706 (11th Cir. 1999), cert. denied, 528 U.S. 934 (1999).

In Martinez, the Supreme Court modified the general rule in Coleman[7] to expand the "cause" that may excuse a procedural default. Martinez, 132 S.Ct. at 1315.

---

[6] Murray v. Carrier, 477 U.S. 478 (1986).

[7] "Negligence on the part of a prisoner's postconviction attorney does not qualify as 'cause.'" Maples v. Thomas, 132 S.Ct. 912, 922 (citing Coleman, 501 U.S. at 753). The Court reasoned that, under principles of agency law, the attorney is the prisoner's agent, and therefore, the principal bears the risk of negligent conduct on the part of his agent. Coleman, 501 U.S. at 753-54. In Coleman, the alleged ineffectiveness of counsel was on appeal from an initial-review collateral proceeding, and in that proceeding the prisoner's claims had been addressed by the state habeas trial court. Id. at 755. However, the Martinez Court addressed inadequate assistance of counsel at an initial-review collateral proceeding.

Allowing a federal habeas court to hear a
claim of ineffective assistance of trial
counsel when an attorney's errors (or the
absence of an attorney) caused a procedural
default in an initial-review collateral
proceeding acknowledges, as an equitable
matter, that the initial-review collateral
proceeding, if undertaken without counsel or
with ineffective counsel, may not have been
sufficient to ensure that proper consideration
was given to a substantial claim. From this
it follows that, when a State requires a
prisoner to raise an ineffective-assistance-
of-trial-counsel claim in a collateral
proceeding, a prisoner may establish cause for
a default of an ineffective-assistance claim
in two circumstances. The first is where the
state courts did not appoint counsel in the
initial-review collateral proceeding for a
claim of ineffective assistance at trial. The
second is where appointed counsel in the
initial-review collateral proceeding, where
the claim should have been raised, was
ineffective under the standards of <u>Strickland
v. Washington</u>, 466 U.S. 668, 104 S.Ct. 2052,
80 L.Ed.2d 674 (1984). To overcome the
default, a prisoner must also demonstrate that
the underlying ineffective-assistance-of-
trial-counsel claim is a substantial one,
which is to say that the prisoner must
demonstrate that the claim has some merit. <u>Cf</u>.
<u>Miller-El v. Cockrell</u>, 537 U.S. 322, 123 S.Ct.
1029, 154 L.Ed.2d 931 (2003) (describing
standards for certificates of appealability to
issue).

<u>Id</u>. at 1318-19.

In the absence of a showing of cause and prejudice, a
petitioner may receive consideration on the merits of a
procedurally defaulted claim if he can establish that a fundamental
miscarriage of justice, the continued incarceration of one who is

actually innocent, otherwise would result.   The Eleventh Circuit

has explained:

> [I]f a petitioner cannot show cause and
> prejudice, there remains yet another avenue
> for him to receive consideration on the merits
> of his procedurally defaulted claim.   "[I]n an
> extraordinary case, where a constitutional
> violation has probably resulted in the
> conviction of one who is actually innocent, a
> federal habeas court may grant the writ even
> in the absence of a showing of cause for the
> procedural default."   Carrier, 477 U.S. at
> 496, 106 S.Ct. at 2649.[8]   "This exception is
> exceedingly narrow in scope," however, and
> requires proof of actual innocence, not just
> legal innocence.   Johnson v. Alabama, 256 F.3d
> 1156, 1171 (11th Cir. 2001).

Ward, 592 F.3d at 1157.   "To meet this standard, a petitioner must

'show that it is more likely than not that no reasonable juror

would have convicted him' of the underlying offense."   Johnson v.

Alabama, 256 F.3d 1156, 1171 (11th Cir. 2001) (quoting Schlup v.

Delo, 513 U.S. 298, 327 (1995)), cert. denied, 535 U.S. 926 (2002).

Additionally, "'[t]o be credible,' a claim of actual innocence must

be based on reliable evidence not presented at trial."   Calderson

v. Thompson, 523 U.S. 538, 559 (1998) (quoting Schlup, 513 U.S. at

324).   With the rarity of such evidence, in most cases, allegations

of actual innocence are ultimately summarily rejected.   Schlup, 513

U.S. at 324.

---

[8] Murray v. Carrier, 477 U.S. 478 (1986).

## VII. Ineffective Assistance of Counsel

"The Sixth Amendment guarantees criminal defendants effective assistance of counsel.  That right is denied when a defense counsel's performance falls below an objective standard of reasonableness and thereby prejudices the defense." Yarborough v. Gentry, 540 U.S. 1, 5 (2003) (per curiam) (citing Wiggins v. Smith, 539 U.S. 510, 521 (2003), and Strickland v. Washington, 466 U.S. 668, 687 (1984)).

> To establish deficient performance, a person challenging a conviction must show that "counsel's representation fell below an objective standard of reasonableness." [Strickland,] 466 U.S. at 688, 104 S.Ct. 2052. A court considering a claim of ineffective assistance must apply a "strong presumption" that counsel's representation was within the "wide range" of reasonable professional assistance. Id., at 689, 104 S.Ct. 2052. The challenger's burden is to show "that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." Id., at 687, 104 S.Ct. 2052.

> With respect to prejudice, a challenger must demonstrate "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." Id., at 694, 104 S.Ct. 2052. It is not enough "to show that the errors had some conceivable effect on the outcome of the proceeding." Id., at 693, 104 S.Ct. 2052. Counsel's errors must be "so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." Id., at 687, 104 S.Ct. 2052.

Harrington, 131 S.Ct. at 787-88.

Since both prongs of the two-part <u>Strickland</u> test must be satisfied to show a Sixth Amendment violation, "a court need not address the performance prong if the petitioner cannot meet the prejudice prong, and vice-versa." <u>Ward</u>, 592 F.3d at 1163 (citation omitted).  "Surmounting <u>Strickland</u>'s high bar is never an easy task." <u>Harrington</u>, 131 S.Ct. at 788 (quoting <u>Padilla v. Kentucky</u>, 130 S.Ct. 1473, 1485 (2010)).

A state court's adjudication of an ineffectiveness claim is accorded great deference.  "The standards created by <u>Strickland</u> and § 2254(d) are both 'highly deferential,' [<u>Strickland</u>], at 689, 104 S.Ct. 2052; <u>Lindh v. Murphy</u>, 521 U.S. 320, 333, n.7, 117 S.Ct. 2059, 138 L.Ed.2d 481 (1997), and when the two apply in tandem, review is 'doubly' so, <u>Knowles</u>[9], 556 U.S., at ----, 129 S.Ct. at 1420." <u>Harrington</u>, 131 S.Ct. at 788.

> The question "is not whether a federal court believes the state court's determination" under the <u>Strickland</u> standard "was incorrect but whether that determination was unreasonable - a substantially higher threshold." <u>Schriro</u>, <u>supra</u>, at 473, 127 S.Ct. 1933. And, because the <u>Strickland</u> standard is a general standard, a state court has even more latitude to reasonably determine that a defendant has not satisfied that standard. <u>See</u> <u>Yarborough v. Alvarado</u>, 541 U.S. 652, 664, 124 S.Ct. 2140, 158 L.Ed.2d 938 (2004) ("[E]valuating whether a rule application was unreasonable requires considering the rule's specificity. The more general the rule, the more leeway courts have in reaching outcomes in case-by-case determinations").

---

[9] <u>Knowles v. Mirzayance</u>, 556 U.S. 111 (2009).

15

_Knowles v. Mirzayance_, 556 U.S. 111, 123 (2009); _see also_
_Rutherford v. Crosby_, 385 F.3d 1300, 1309 (11th Cir. 2004) ("In
addition to the deference to counsel's performance mandated by
_Strickland_, the AEDPA adds another layer of deference--this one to
a state court's decision--when we are considering whether to grant
federal habeas relief from a state court's decision.").

## VIII. Findings of Fact and Conclusions of Law

### A. Ground One

As ground one, Petitioner claims that counsel were ineffective
because they failed to: (a) object to Nurse Muskus being allowed to
testify as an expert; (b) list in the discovery response and
introduce Lauren Sanchez's second statement changing the amount of
time Petitioner was alone with the victim; (c) properly address the
victim's testimony concerning her post-traumatic stress disorder;
(d) request a _Richardson_ hearing or renew a motion for continuance
concerning the State's late disclosure of a laboratory report
regarding spermatozoa obtained from the rape kit; (e) call Dr.
Plattock as a defense witness to rebut Nurse Muskus' testimony; (f)
object to the testimony of Julianne Mitowski and Alex Dauth
relating to the victim's hearsay statements; (g) request a hearing
on the admission of hearsay evidence and the issue of reflective
thought; (h) develop the defense that the victim was not truthful
about the timing of her last sexual encounter; (i) introduce the
laboratory report into evidence; and (j) object to the prosecutor's

16

improper comments in closing argument.  Respondents assert that
Petitioner affirmatively waived his right to file a Rule 3.850
motion in state court as to the instant case; that by doing so,
Petitioner waived any ineffectiveness claims and his right to raise
those claims in state court; and, thus he is procedurally barred
from raising those same ineffectiveness claims, under ground one,
on federal habeas review.  Response at 9.

The following facts are pertinent.  On February 28, 2008,
Petitioner, through counsel, filed a second amended Rule 3.850
motion, see Resp. Ex. 9 at 232-52, and the State responded, see id.
at 256-69.  The court summarily denied five of the remaining
claims[10] (one, three, four, seven, and ten) and ordered that an
evidentiary hearing be held as to claims six, eight, and nine.  Id.
at 271-77.  Prior to the evidentiary hearing, the State filed a
motion to strike or dismiss the motion, asserting that Petitioner
waived his right to file a Rule 3.850 motion, as part of a plea
agreement, when he pled guilty to sexual activity upon a child (his
step-daughter) in Case No. 03-1883.  Resp. Ex. 10 at 409-11.

The court held a hearing on February 20, 2009, at which the
trial judge heard counsels' arguments.  Id. at 481-509.  In finding
that Petitioner had waived his right to file a Rule 3.850 motion in

---

[10] The court denied Petitioner's first Rule 3.850 motion.
Resp. Ex. 8 at 150-89.  In considering Petitioner's motion for
rehearing, see id. at 190-98, the court granted him leave to amend
eight of his claims, but stated that grounds two and five remained
denied with prejudice, see id. at 199-200.

the instant case and thereby dismissing his second amended Rule
3.850 motion, the trial court stated in pertinent part:

> On November 9, 2004, the Defendant was
> convicted and sentenced to serve ten years in
> prison followed by five years sex offender
> probation after being found guilty at trial of
> Sexual Battery of a Helpless Person in Case
> Number CF03-1797. At the time of sentence, the
> Defendant also had charges pending in Case
> Number CF03-1883 for Sexual Activity with a
> Child and Battery. On January 31, 2006, the
> Defendant entered a plea to Count I, Sexual
> Activity with a Child, in Case Number CF03-
> 1883 and was sentenced, in accordance with the
> plea agreement, to 11 years in prison followed
> by 12 years of sex offender probation,
> concurrent with the sentence he was currently
> serving in Case Number CF03-1797. (See
> Transcript of January 31, 2006, Plea and
> Sentence in Case Number CF03-1883, attached
> hereto at Appendix "A").[11] The State
> dismissed Count II. In exchange for his plea,
> the Defendant agreed, through his attorney,[12]
> not to pursue a Motion for Postconviction
> Relief in Case Number CF03-1797. (See Appendix
> "A", page 7-8.) At the time the plea was
> entered, the Defendant indicated that he had
> fully discussed the plea and the circumstances
> surrounding it with his attorney. (See
> Appendix "A", page 14, lines 3-5.) After the
> sentence was imposed in Case Number CF03-1883,
> the Court asked counsel whether the sentence
> was consistent with the plea agreement, to
> which the Defendant's counsel responded: "I
> did not hear anything inconsistent with the
> plea agreement." (See Appendix "A", page 21,
> lines 12-16.) The Assistant State Attorney
> reminded the Court of the Defendant's
> agreement not to file any direct or collateral

---

[11] See P. Ex. 2, Appendix A.

[12] O. David Barksdale and Henry Matson Coxe, III represented
Petitioner in Case No. 03-1883. See P. Ex. 2, Appendix A at 2, 11,
13.

attacks in Case Number CF03-1797. (<u>See</u>
Appendix "A", page 21, lines 21-25.)
Thereafter, the following exchange occurred:

> THE COURT: I will make sure on the
> record that it's placed on the
> record that it's my understanding as
> part of this plea that the defendant
> has indicated through his attorney
> that nothing further will be filed
> and -- in case number CF03-1797 as
> part of any post-conviction motions
> or seeking other relief with the
> understanding --- that it is my
> understanding that the appeal that
> was filed is final.
>
> MR BARKSDALE: It is, Your Honor[.]

(<u>See</u> Appendix "A", page 22, lines 1-9.)
Afterward, the Court inquired of the Defendant
whether he understood everything that was
said. The Defendant indicated that he did and
had no further questions for the Court. (<u>See</u>
Appendix "A", page 23, lines, 2-7.) The waiver
was noted in the Court minutes (<u>See</u> Court
Notes, Attached hereto at Appendix "B")[13], as
well as the judgment and sentence in Case
Number CF03-1883. (<u>See</u> Judgment and Sentence,
attached hereto at Appendix "C".)[14]

A defendant can waive his right to
collaterally attack his judgment and sentence.
<u>Stahl v. State</u>, 972 So. 2d 1013 (Fla. 2d DCA
2008). The waiver must be expressly stated in
the plea agreement and the defendant must
knowingly and voluntarily agree to the waiver.
<u>Id</u>. at 1015. In the present case, the record
in Case Number CF03-1883 clearly establishes
that the Defendant knowingly and voluntarily
agreed to waive his right to file
postconviction motions in Case Number CF03-
1797. The Defendant was represented by counsel

---

[13] <u>See</u> P. Ex. 2, Appendix B.

[14] <u>See</u> P. Ex. 2, Appendix C.

when he entered his plea and waived his right
to file any postconviction motions. At the
time of the plea in Case Number CF03-1883,
Defendant's counsel informed the court, "As
far as any collateral, nothing has been filed.
That is part of the plea agreement, that
nothing would be filed in that earlier case
number, which is 03-1797." (See Appendix "A",
page 7, line 25, and page 8, lines 1-3.) After
the attorneys placed the terms of the plea
agreement on the record but before taking the
plea, the court asked the Defendant the
following question: "All right. Mr. Jennings,
is this your understanding and is this what
you want to do?" (See Appendix "A", page 8,
lines 23 and 24.) The Defendant responded,
"Yes, Your Honor." (See Appendix "A", page 8,
line 25.)

Despite the Defendant's express waiver to
the contrary, he filed a Motion for
Postconviction Relief in Case Number CF03-
1797. The Court hereby finds and determines
that the Defendant's waiver is binding. He
benefitted from the bargain he made when he
entered his plea in Case Number CF03-1883 and
has offered no basis to avoid the binding
effect of his waiver. The Court further finds
the Defendant's argument that the State waived
its right to assert the waiver in defense of
the Motion is without merit.

P. Ex. 2 at 1-3; Resp. Ex. 10 at 433-35; 500-06. Without requiring

the State to file a response, the appellate court affirmed the

trial court's decision per curiam on November 24, 2009. Jennings,

22 So.3d 559.

After reviewing the transcript of the plea proceeding in Case

Number 03-1883, the Court finds that the record fully supports the

trial judge's determination that Petitioner knowingly and

voluntarily agreed to waive his right to file Rule 3.850 motions

and appeals in the instant case.[15]  Represented by counsel at the
time he entered the plea in Case Number 03-1883, Petitioner
understood his rights and waived his right to file any
postconviction motions and appeals in this case.  As the trial
judge found, Petitioner benefitted from the bargain he made when he
entered his guilty plea in Case Number 03-1883 on count one and did
not show any basis to avoid the binding effect of his waiver.
Moreover, given the record, the trial judge conducted a sufficient
inquiry pursuant to Florida Rule of Criminal Procedure 3.172(c)(7).
See Plea Tr. at 7-15, 21-23.

Even assuming arguendo that Petitioner involuntarily waived
his right to file a Rule 3.850 in state court as to the instant
case, properly exhausted in the state courts and now is properly
before this Court as to his ineffectiveness claims, the claims are
nevertheless without merit.  In evaluating the performance prong of
the Strickland ineffectiveness inquiry, there is a strong
presumption in favor of competence.  The presumption that counsel's
performance was reasonable is even stronger when, as in this case,
counsel is an experienced criminal defense attorney.[16]  The inquiry

---

[15] See P. Ex. 2, Appendices B and C (stating that "no further
appeals or 3.850" can be filed); Plea Tr. at 7.

[16] "When courts are examining the performance of an experienced
trial counsel, the presumption that his conduct was reasonable is
even stronger."  Chandler v. United States, 218 F.3d 1305, 1316
(11th Cir. 2000) (en banc); cert. denied, 531 U.S. 1204 (2001); see
Williams v. Head, 185 F.3d 1223, 1229 (11th Cir. 1999) (noting that
"[i]t matters to our analysis" whether the attorney is an

is "whether, in light of all the circumstances, the identified acts or omissions were outside the wide range of professionally competent assistance." <u>Strickland</u>, 466 U.S. at 690.  "[H]indsight is discounted by pegging adequacy to 'counsel's perspective at the time' . . . and by giving a 'heavy measure of deference to counsel's judgments.'" <u>Rompilla v. Beard</u>, 545 U.S. 374, 381 (2005) (citations omitted).   Thus, Petitioner must establish that no competent attorney would have taken the action that counsel, here, chose.  <u>Dingle v. Sec'y for Dept. of Corr.</u>, 480 F.3d 1092, 1099 (11th Cir. 2007) ("The question is whether some reasonable lawyer at the trial could have acted as defense counsel acted in the trial at issue and not what 'most good lawyers' would have done.") (citation omitted), <u>cert</u>. <u>denied</u>, 552 U.S. 990 (2007).  Petitioner has failed to carry this burden.

Given the record, counsels' performance was within the wide range of professionally competent assistance.  <u>See</u> Resp. Exs. 8 at 153-54, ground 1(b); 156-57, ground 1(e); 9 at 272-73, ground 1(a); 273-74, ground 1(c); 274-75, ground 1(d); 276, ground 1(g); 276-77, ground 1(j).  Moreover, with respect to grounds 1(f) and (g),

---

experienced criminal defense attorney), <u>cert</u>. <u>denied</u>, 530 U.S. 1246 (2000).  Thomas E. Cushman was admitted to the Florida Bar in 1973. <u>See</u> http://www.floridabar.org.  Thus, at the time of Petitioner's trial in August 2004, Cushman had been practicing law for over thirty years and had been board certified in criminal trial work since 1987.  Anne Marie Gennusa, who was admitted to the Florida Bar in 1999, was co-counsel for Petitioner at trial.  <u>See</u> Tr. at 93; http://www.floridabar.org.

Petitioner acknowledges that he has not stated grounds for habeas corpus relief since the victim testified at trial.  <u>See</u> Reply at 14 (citing <u>Campbell v. Herden</u>, 302 Fed.Appx. 864 (11th Cir. 2008)). Finally, with respect to grounds 1(h) and (i), the admission of the laboratory report to demonstrate that the victim may have been mistaken about the date of her last sexual encounter would have been merely cumulative since the victim, on cross-examination, testified that she was estimating the date of her last sexual encounter.  <u>See</u> Tr. at 383; Resp. Ex. 8 at 138-49.

Even assuming arguendo deficient performance by defense counsel, Petitioner has not shown prejudice.  Petitioner has not shown that, but for counsels' alleged unprofessional errors, a reasonable probability exists that the outcome of the case would have been different.  Petitioner's ineffectiveness claims fail because he has not shown either deficient performance or resulting prejudice. Given the record, Petitioner's ineffectiveness claims are without merit.

### B. Ground Two

As ground two, Petitioner asserts that the trial court erred when it allowed: (a) Nurse Muskus to testify as a medical expert regarding her findings; (b) the victim to testify on cross-examination about her post-traumatic stress disorder; and (c) the prosecutor to comment upon "these critical evidentiary errors" in closing argument.  Petition at 8.  Respondents assert that ground

2(b) is procedurally barred because the claim was not raised on direct appeal. Response at 7. This Court agrees. Ground 2(b) is procedurally barred since Petitioner failed to raise the claim in a procedurally correct manner. Petitioner has not shown either cause excusing the default, or actual prejudice resulting from the bar. Moreover, he has failed to identify any fact warranting the application of the fundamental miscarriage of justice exception. Therefore, the Court need not address the merits of ground 2(b).

With respect to grounds 2(a) and (c), Petitioner argued these issues on direct appeal, see Resp. Ex. 7 at 45-52; the State filed an Answer Brief, see id. at 88-100; Petitioner filed a Reply Brief, see id. at 119-26, and the appellate court affirmed Petitioner's conviction and sentence per curiam without a written opinion concerning these issues, see Jennings, 916 So.2d 810. To the extent that Petitioner is raising the same claims he presented on direct appeal, the claims are sufficiently exhausted.

The State, in its appellate brief, addressed the issues on the merits. See Resp. Ex. 7 at 90-91, 98-100. If the appellate court addressed the merits of these claims, Petitioner would not be entitled to relief because the state court's adjudication of these claims is entitled to deference under AEDPA.[17] After a thorough review of the record and the applicable law, the Court concludes that the state court's adjudication of these claims was not

---

[17] See Harrington, 131 S.Ct. at 785.

contrary to clearly established federal law and did not involve an unreasonable application of clearly established federal law. Nor was the state court adjudication based on an unreasonable determination of the facts in light of the evidence presented in the state court proceedings. Thus, Petitioner is not entitled to relief on the basis of grounds 2(a) and (c).

Even assuming that the appellate court did not affirm on the merits or that the state court's adjudication of grounds 2(a) and (c) is not entitled to deference under AEDPA, Petitioner's claims are still without merit. Moreover, even assuming that ground 2(b) is not procedurally barred and presents an issue of federal constitutional dimension, Petitioner's claim, nevertheless, is without merit. Given the record, the trial court did not abuse its discretion by allowing Nurse Muskus to testify about her findings and permitting the victim to testify on cross-examination about her post-traumatic stress disorder. Moreover, to the extent that there may have been a federal constitutional violation, this Circuit has recognized that a reviewing court must engage in a harmless error analysis. United States v. Allen, 302 F.3d 1260, 1276 (11th Cir. 2002). On federal habeas review, harmless error is determined by applying the standard set forth in Brecht v. Abrahamson, 507 U.S. 619 (1993). As the Eleventh Circuit recently expressed:  "In short, we observe, consistent with the Supreme Court's decision in Fry [v. Pliler, 551 U.S. 112 (2007)], that a federal habeas court

may deny relief based solely on a determination that a federal constitutional error was harmless under the Brecht standard." Mansfield v. Sec'y, Dep't of Corr., 679 F.3d 1301, 1308 (11th Cir. 2012).

Applying Brecht, "a federal constitutional error is harmless unless there is 'actual prejudice,' meaning that the error had a 'substantial and injurious effect or influence' on the jury's verdict." Id. at 1307 (citing Brecht, 507 U.S. at 637). Accordingly, "the erroneous admission of evidence is likely to be harmless under the Brecht standard where there is significant corroborating evidence or where other evidence of guilt is overwhelming." Id. at 1313 (citations omitted).  In the instant case, the State presented substantial evidence against Petitioner. Lauren Sanchez (the victim's friend and Petitioner's stepdaughter) testified that Petitioner had been drinking prior to the commission of the sexual offense upon the victim.  Tr. at 123, 132-33. According to Lauren Sanchez and Wil Tyler, Petitioner went to the victim's home where the victim was passed out on the couch. Id. at 133, 201.  Once inside the victim's home, Petitioner wanted to see the victim's bedroom and took the comforter off of the victim's bed, telling his stepdaughter to get into bed and that he would bring the victim into the bedroom. Id. at 139-40.  According to Lauren Sanchez, Petitioner was alone with the victim for ten to fifteen minutes.  Id. at 141.  Wil Tyler, who had not consumed

alcohol that night, <u>id</u>. at 200, testified that, when the doorbell rang, he saw a man stand up and he had "a white head of hair, which that is what [he] saw earlier, and some underwear down to the knees . . . ." <u>Id</u>. at 212.  Based on Wil's description of the movement and positioning of the bodies on the couch, he "thought someone was having sex . . . ."  <u>Id</u>. at 211.

The victim testified that, upon "waking up from a drunken state," she saw Petitioner (who she had called "uncle" because she knew him well and had vacationed with the family since Petitioner's stepdaughter was her friend) "starring [sic] down" at her with his fingers in her vagina.  <u>Id</u>. at 330-31.  She also described how Petitioner "put his penis in [her]" and then put a pillow over her face and held it down.  <u>Id</u>. at 332.  According to the victim, when the doorbell rang, she put on her underwear and ran to her bedroom. <u>Id</u>. at 333.  When Alex Dauth and Julie Mitowski rang the doorbell at the victim's home, <u>id</u>. at 82, 213, 244-45, Petitioner answered the door.  <u>Id</u>. at 82, 245.  Mitowski, who knew Petitioner well because she had vacationed with the family due to her friendship with his stepdaughter, <u>id</u>. at 78, stated Petitioner "seemed weird" and did not open the door all the way, but just wide enough "for like his head and his torso to come out . . . ."  <u>Id</u>. at 82, 83. Dauth stated that, when Petitioner answered the door, he "kind of cracked it and kind of put his body in front of the door."  <u>Id</u>. at 245.  Given the State's evidence against Petitioner, any error in

the admission of the challenged evidence was harmless.   Thus, Petitioner's grounds 2(a) and (b) do not warrant federal habeas relief.   <u>See</u> Response at 14-16.

Moreover, Petitioner ground 2(c) concerning the prosecutor's comments during closing argument about the victim's testimony on cross-examination relating to her post-traumatic stress disorder is also without merit.   The remarks at issue were not improper.[18] Attorneys are permitted wide latitude in their closing arguments, and the record reflects that the trial judge instructed the jury that the attorneys were not witnesses in the case, and therefore their statements and arguments were not evidence.   Tr. at 22, 467-68;; <u>see</u> <u>Hammond v. Hall</u>, 586 F.3d 1289, 1334 (11th Cir. 2009), <u>cert</u>. <u>denied</u>, 131 S.Ct. 917 (2011); <u>Brown v. Jones</u>, 255 F.3d 1273, 1280 (11th Cir. 2001) (citations omitted) (stating that "jurors are presumed to follow the court's instructions"), <u>cert</u>. <u>denied</u>, 534 U.S. 1085 (2002).   After thoroughly reviewing the record, viewing the remarks in the context of the trial as a whole, and assessing their "probable impact" on the jury, <u>see</u> <u>United States v. Hill</u>, 643 F.3d 807, 849 (11th Cir. 2011), this Court is convinced that the

---

[18] Tr. at 519-20; <u>see</u> Petition at 9; Response at 16.

prosecutor's comments did not result in a due process violation.[19]
<u>See</u> Response at 16-18; Resp. Ex. 7 at 98-100.

### C. Ground Three

As ground three, Petitioner asserts that the trial court's
finding that Petitioner waived his right to post conviction relief
in the instant case by entering a guilty plea in a separate case
(Case Number 03-1883, count one, sexual activity with a child - his
stepdaughter) is not supported by the record.  <u>See</u> Petition at 9.
Petitioner raised this issue on his appeal of the dismissal of his
Rule 3.850 motion.  <u>See</u> Resp. Ex. 11 at 28-33.  Without requiring
the State to file a response, the appellate court affirmed the
trial court's decision per curiam.  <u>Jennings</u>, 22 So.3d 559.

The Eleventh Circuit Court of Appeals "has repeatedly held
defects in state collateral proceedings do not provide a basis for
habeas relief."  <u>Carroll v. Sec'y, Dep't of Corr</u>, 574 F.3d 1354,
1365 (11th Cir.) (citations omitted), <u>cert</u>. <u>denied</u>, 130 S.Ct. 500
(2009).  "The reasoning behind this well-established principle is
straightforward: a challenge to a state collateral proceeding does
not undermine the legality of the detention or imprisonment--i.e.,

---

[19] The reversal of a conviction is warranted only when improper
comments by a prosecutor have "'so infected the trial with
unfairness as to make the resulting conviction [or sentence] a
denial of due process.' <u>Darden v. Wainwright</u>, 477 U.S. 168, 181,
106 S.Ct. 2464, 91 L.Ed.2d 144 (1986) (quoting <u>Donnelly v.
DeChristoforo</u>, 416 U.S. 637, 643, 94 S.Ct. 1868, 40 L.Ed.2d 431
(1974))." <u>Parker v. Head</u>, 244 F.3d 831, 838 (11th Cir. 2001), <u>cert</u>.
<u>denied</u>, 534 U.S. 1046 (2001).

the conviction itself--and thus habeas relief is not an appropriate remedy." <u>Id</u>. (citations omitted).  Thus, this issue does not state a basis for federal habeas relief.

### IX. Certificate of Appealability Pursuant to 28 U.S.C. § 2253(c)(1)

If Petitioner seeks issuance of a certificate of appealability, the undersigned opines that a certificate of appealability is not warranted.  This Court should issue a certificate of appealability only if the Petitioner makes "a substantial showing of the denial of a constitutional right." 28 U.S.C. §2253(c)(2).  To make this substantial showing, Petitioner "must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong," <u>Tennard v. Dretke</u>, 542 U.S. 274, 282 (2004) (quoting <u>Slack v. McDaniel</u>, 529 U.S. 473, 484 (2000)), or that "the issues presented were 'adequate to deserve encouragement to proceed further,'" <u>Miller-El v. Cockrell</u>, 537 U.S. 322, 335-36 (2003) (quoting <u>Barefoot v. Estelle</u>, 463 U.S. 880, 893 n.4 (1983)).

Where a district court has rejected a petitioner's constitutional claims on the merits, the petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong.  <u>See Slack</u>, 529 U.S. at 484.  However, when the district court has rejected a claim on procedural grounds, the petitioner must show that "jurists of reason would find it debatable whether the

petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." <u>Id</u>. Upon consideration of the record as a whole, this Court will deny a certificate of appealability.

Therefore, it is now

**ORDERED AND ADJUDGED:**

1.    The Petition (Doc. #1) is **DENIED**, and this action is **DISMISSED WITH PREJUDICE.**

2.    The Clerk of the Court shall enter judgment denying the Petition and dismissing this case with prejudice.

3.    If Petitioner appeals the denial of the Petition, the Court denies a certificate of appealability.  Because this Court has determined that a certificate of appealability is not warranted, the **Clerk** shall terminate from the pending motions report any motion to proceed on appeal as a pauper that may be filed in this case.  Such termination shall serve as a denial of the motion.

4.    The Clerk of the Court shall close this case.

**DONE AND ORDERED** at Jacksonville, Florida, this 13th day of

November, 2012.

MARCIA MORALES HOWARD
United States District Judge

sc 11/1
c:
Counsel of Record